| | |
|---|---|
| GEORGE IVORY, | ) |
|     Petitioner, | ) ) ) |
|     v. | ) No. 3:18-cv-00537 ) ) Judge Marvin E. Aspen |
| UNITED STATES OF AMERICA, | ) ) |
|     Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

In this proceeding brought under 28 U.S.C. § 2255, Petitioner George Ivory moves for leave to conduct discovery into an alleged material misrepresentation of fact made by the Assistant U.S. Attorney who prosecuted his criminal case. (Petitioner's Motion for Leave to Conduct Discovery ("Mot.") (Civ. Dkt. No. 91).)[1] For the following reasons, we deny the motion.

**BACKGROUND**

**I.  Ivory's Criminal Case**

In July 2015, the Government obtained a seven-count superseding indictment against Ivory and another individual, Anthony Coleman. (Superseding Indictment (Crim. Dkt. No. 17).) The superseding indictment charged Ivory in connection with incidents that took place on March 23, 2015, and May 1, 2015. (*Id.*) With respect to the March 2015 incident, the superseding indictment charged Ivory with being a felon in possession of a firearm (Count 5), Coleman with

---

[1] Citations to "Civ. Dkt. No." refer to Ivory's § 2255 case, Case No. 3:18-cv-00537 (M.D. Tenn.), and citations to "Crim. Dkt. No." refer to Ivory's criminal case, Case No. 3:15-cr-00075-1 (M.D. Tenn.). For ECF filings, we cite to the page number(s) set forth in a document's ECF footer.

possession of cocaine with intent to distribute (Count 6), and both Ivory and Coleman with using a firearm during and in relation to a drug trafficking offense (Count 7). (*Id.* at 3–4.) The remaining four counts related to the May 2015 incident, which arose out of an encounter involving Ivory, a rival drug dealer referred to as "White Boy," and two people seeking to buy crack cocaine from White Boy, Cecil Grissette and Laquinta Thomas. (*Id.* at 1–2; January 20, 2017 Revised Presentence Report for George Ivory ("Revised PSR") (Civ. Dkt. No. 83-1) ¶¶ 4–9.) During the encounter, Grissette told Ivory that he was not going to buy drugs from him; in response, Ivory brandished a loaded firearm, intending to rob Grissette of the $60 he was going to use to buy crack cocaine from White Boy. (Revised PSR ¶¶ 7–8.) After Thomas told Ivory to leave Grissette alone, Ivory struck her in the head with his gun and hit Grissette with the gun as well. (*Id.* ¶ 8.) Ivory's cousin Donta Waggoner and others tried to stop Ivory, but to no avail, as Ivory then shot Grissette multiple times. (*Id.* ¶¶ 4, 8; October 12, 2022 Declaration of Kathleen Morris ("Oct. 12 Morris Decl.") (Civ. Dkt. No. 91-1) ¶ 9.) In connection with these actions, the Government charged Ivory with possession of cocaine with intent to distribute (Count 1); Hobbs Act robbery and extortion and attempted robbery and extortion (Count 2); using a firearm during and in relation to a crime of violence and a drug trafficking crime (Count 3); and being a felon in possession of ammunition (Count 4). (Superseding Indictment at 1–2.) Judge Campbell[2] thereafter severed trial on Counts 1–4 from trial on Counts 5–7. (Crim. Dkt. No. 147 at 3.) Trial on Counts 5–7 was set for November 15, 2016, and trial on Counts 1–4 was set for March 28, 2017. (*Id.*; Crim. Dkt. No. 148 at 1.)

After reviewing the evidence provided by the Government in discovery, Ivory's attorney, Kathleen Morris, decided that the charges related to the May 2015 incident (Counts 1–4)

---

[2] Judge Todd Campbell and Chief Judge Kevin Sharp oversaw Ivory's criminal case before it was transferred to us in February 2017. (*See* Crim. Dkt. Nos. 164, 199.)

"presented a greater risk of conviction" to Ivory than those related to the March 2015 incident (Counts 5 and 7). (Oct. 12 Morris Decl. ¶¶ 2–3.) Even so, Morris's recollection is that there was no physical evidence tying Ivory to the crimes charged in connection with the May 2015 incident, nor was there any incriminating statement from Ivory. (*Id.* ¶ 4.) Rather, the Government's only evidence seemed to be potential witness statements. (*Id.*) Although Morris was unsure who the Government might call to testify against Ivory, she expected it would be Thomas and White Boy. (*Id.* ¶ 7.) Morris further believed that she could impeach Thomas at trial with various inconsistent statements she had made. (*Id.* ¶¶ 5–6.)

The pretrial conference for the trial on Counts 5–7 was set for November 7, 2016. (Crim. Dkt. No. 114 at 1; Crim. Dkt. No. 147 at 3.) Four days before this conference, former Assistant U.S. Attorney Sunny Koshy told Morris that his witnesses with respect to the May 2015 incident were Waggoner, White Boy, and "someone else," who Morris took to mean Thomas. (Oct. 12 Morris Decl. ¶ 7.) Koshy also told Morris that "White Boy had 'made quite an impression' on the grand jury." (*Id.*)

On November 7 (the day of the pretrial conference), Koshy showed Morris one or two pages from the transcript of Waggoner's grand jury testimony. (*Id.* ¶ 8.) According to Morris, these "pages showed that Waggoner essentially told the same story as Thomas ultimately told, which made him a very important witness." (*Id.*) Koshy also told Morris "that he 'had Waggoner in Kentucky.'" (*Id.*) At the time, federal detainees were held in at least two jails in Kentucky, so Morris understood this statement to mean "that Waggoner was in one of the Kentucky jails, being held as a material witness for the trial, or perhaps was being held on undisclosed federal charges." (*Id.*) Koshy then "offered a binding plea agreement of 25 years to

resolve the case." (*Id.*) This offer came after prior discussions in which Koshy "had rejected more favorable terms." (*Id.*)

The next day, Morris met with Ivory in jail and recommended that he accept the Government's plea offer. (*Id.* ¶ 9.) Morris made this recommendation, in part, because the evidence against Ivory "was significant and likely compelling to a jury." (November 16, 2022 Declaration of Kathleen Morris ("Nov. 16 Morris Decl.") (Civ. Dkt. No. 99-1) ¶ 5.) Specifically, the Government "had three witnesses—Thomas, Waggoner, and White Boy—available who would tell the same story." (Oct. 12 Morris Decl. ¶ 9.) Morris was particularly concerned that Waggoner's familial relationship to Ivory "would carry significant weight with the jury" and that his expected corroboration of Thomas's and White Boy's testimony would undercut Morris's impeachment of these two witnesses. (*Id.*) Thus, "[i]t was important to [Morris] that Waggoner was apparently certain to appear as a witness as he was being detained in Kentucky." (*Id.*) Nonetheless, Morris "would have made the same recommendation even if" Koshy had not said that Waggoner was in Kentucky because she "would have fully expected the government to compel Waggoner's appearance and testimony at trial, just as it had compelled his testimony before the grand jury." (Nov. 16 Morris Decl. ¶ 6.) The 25-year sentence offered by the Government also factored into Morris's decision to recommend taking the plea offer, as this sentence was, according to Morris's calculations, below the bottom of Ivory's advisory Guidelines range. (*Id.* ¶ 5.) Ultimately, Morris's "review of the discovery materials, [her] investigation, and [her] overall understanding of the expected testimony of the other government witnesses caused [her] to believe that it was in Mr. Ivory's best interests to accept the government's offer." (*Id.* ¶ 6.)
4

Case 3:18-cv-00537   Document 103   Filed 01/06/23   Page 4 of 9 PageID #: 528

Ivory followed Morris's recommendation, and he pled guilty to Counts 1–4 of the Superseding Indictment on November 10, 2016. (*Id.* ¶ 7; Crim. Dkt. Nos. 180–81.) Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed that Ivory's sentence would include 25 years in custody and 5 years of supervised release. (Crim. Dkt. No. 182 at 11.) The parties also agreed that the Government would move to dismiss Counts 5 and 7 once a sentence had been imposed. (*Id.* at 2.)

In February 2017, Morris moved to withdraw as Ivory's counsel due to a non-waivable conflict of interest. (Crim. Dkt. Nos. 191, 193.) Chief Judge Sharp granted the motion and appointed Cynthia Sherwood as Ivory's new counsel. (Crim. Dkt. Nos. 195–96.) In September 2017, we sentenced Ivory to 25 years of imprisonment and 5 years of supervised release. (Crim. Dkt. Nos. 223–24.) Ivory later filed a *pro se* notice of appeal, but the Sixth Circuit dismissed the appeal as untimely. (Crim. Dkt. Nos. 229, 231.)

## II.     Ivory's § 2255 Case

On June 8, 2018, Ivory moved *pro se* to vacate his sentence under 28 U.S.C. § 2255, alleging that Sherwood failed to render effective assistance by failing to file a timely notice of appeal. (Civ. Dkt. No. 1 at 4, 9–10.) We ordered an evidentiary hearing to be held on Ivory's claim and directed the federal defender's office to appoint counsel for Ivory. (Civ. Dkt. No. 14.) In May 2019, Ivory, now represented by his current counsel, Michael Holley, moved to amend his § 2255 petition to add a claim that Morris provided ineffective assistance in advising him to plead guilty. (Civ. Dkt. No. 21.) We granted the motion. (Civ. Dkt. No. 22.) Ivory then moved to expand the evidentiary hearing to include his claim against Morris. (Civ. Dkt. No. 26.) We granted this motion as well. (Civ. Dkt. No. 33.)

In April 2021, we granted Ivory's motion to withdraw his claim against Sherwood (Civ. Dkt. Nos. 59–60), which left his claim against Morris as the only claim at issue in this § 2255

proceeding. This claim alleges that Morris unreasonably advised Ivory to plead guilty pursuant to a binding Rule 11(c)(1)(C) plea bargain with a 25-year sentence. (*See* Civ. Dkt. No. 37 at 2.) Ivory contends that there was no physical proof against him, and that Morris had developed useful impeachment evidence against the putative witnesses, as well as useful mitigation evidence from a doctor's evaluation of Ivory. (Civ. Dkt. No. 38 at 2.) Accordingly, Ivory claims, Morris should have sought to dismiss the charges or advised Ivory to go to trial based on the lack of evidence. (Civ. Dkt. No. 21 at 2.) Instead, Morris failed to adequately investigate the evidence against him and unreasonably advised him to accept a 25-year sentence, which is "commensurate with a sentence for murder." (Civ. Dkt. No. 37 at 2.) This deficient performance prejudiced him, Ivory continues, because absent Morris's advice, he would have proceeded to trial. (*See* Civ. Dkt. No. 38 at 4–5.)

After continuing the evidentiary hearing multiple times, we set the date of the hearing for October 13, 2022. (Civ. Dkt. No. 80.) The night before the hearing, at 10:18 p.m., Ivory filed the present motion. In view of Ivory's motion, we continued the evidentiary hearing until March 2023 and ordered briefing on the motion. (*See* Civ. Dkt. Nos. 92–94, 96.)

## LEGAL STANDARD

"Courts have the discretion to grant discovery in collateral challenges upon a showing of 'good cause' under Rule 6 of the Rules Governing 28 U.S.C. § 2255 cases." *Poulsen v. United States*, 717 F. App'x 509, 517–18 (6th Cir. 2017). Good cause exists "where specific allegations show reason to believe that the [petitioner] may, if the facts are fully developed, be able to demonstrate entitlement to relief." *Id.* at 518 (quotation marks omitted). The petitioner bears the burden of demonstrating that the requested discovery is material, i.e., that the "requested discovery could 'resolve any factual disputes that could entitle him to relief.'" *Williams v.*

*Bagley*, 380 F.3d 932, 974–75 (6th Cir. 2004) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)).

**ANALYSIS**

According to Ivory, former Assistant U.S. Attorney Koshy implied that a key witness—Donta Waggoner—was in federal custody when he told Morris that he "had Waggoner in Kentucky." (*See* Mot. at 3–6.) But recently discovered evidence, Ivory continues, indicates that this implication was false. (*Id.* at 1, 4–6.) In connection with this purportedly material misrepresentation, Ivory requests (1) the production of all of the Government's records regarding Waggoner's and White Boy's potential service as witnesses against Ivory, including all statements made by these witnesses, each fact useful for impeaching them, and each record showing their availability to testify; (2) leave to serve interrogatories asking what Koshy said and knew regarding Waggoner's availability to testify in October and November 2016; and (3) leave to depose Koshy if the first two requests do not resolve the underlying issue. (*Id.* at 8.)

Ivory has not shown "good cause" for obtaining this discovery. As an initial matter, Ivory's discovery requests are much too broad. Ivory's only specific allegations arising out of the recently discovered evidence that is the basis for his motion are that Koshy told Morris that Waggoner was in federal custody when, in fact, he was not. These allegations, however, provide no basis for Ivory to obtain information about Waggoner that is unrelated to his whereabouts at the time, such as witness statements and impeachment evidence. Nor do they provide a basis to obtain similar information about White Boy, a different witness altogether. Ivory's attempt to obtain information untethered to his specific allegations amounts to an inappropriate fishing expedition. *See Stanford*, 266 F.3d at 460.

Moreover, although some of the requested discovery could possibly support his allegations, Ivory has not shown how these allegations, if proven, demonstrate Morris's allegedly

7

ineffective assistance of counsel, which is the only basis for Ivory's § 2255 claim at this time. *See id.* (habeas petitioner was not entitled to discovery where it "would not resolve any factual disputes that could entitle him to relief, even if the facts were found in his favor"). Citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984), in which the Supreme Court recognized that the "Government violates the right to effective assistance [of counsel] when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense," Ivory appears to contend that proving his allegations would help support his ineffective assistance claim against Morris "because the fact pattern would show the *government unethically induced* ineffective plea-bargain advice from defense counsel." (Mot. at 6–7 (emphasis in original).) We do not read *Strickland* as endorsing Ivory's ineffective counsel-by-inducement theory, but even if it did, any assertion by Koshy about Waggoner's custodial status could not have "induced" any aspect of Morris's advice because, as set forth in her November 16, 2022 declaration, Morris would have provided the same advice even if Koshy had *not* told her that he had Waggoner in Kentucky. (Nov. 16 Morris Decl. ¶ 6.) Notably, Ivory fails to explain how the discovery he seeks could establish his ineffective assistance claim against Morris in light of this declaration. (*See generally* Defendant's Reply to Response to His Motion for Leave to Conduct Discovery (Civ. Dkt. No. 100).) In fact, Ivory's reply seemingly abandons his initial contention that the discovery he seeks will support his ineffective assistance claim against Morris, as the filing argues that the requested discovery is relevant to a different type of § 2255 claim—an involuntary plea claim under *Brady v. United States*, 397 U.S. 742 (1970).[3] (*See id.*)

---

[3] Ivory has moved separately to add this claim to his § 2255 petition, and the parties are currently briefing this motion. (*See* Civ. Dkt. Nos. 101–02.) We express no opinion at this time regarding whether this claim should be added to this proceeding and, if so, whether the discovery Ivory seeks is material to this claim.

Because Morris would have advised Ivory to take the Government's plea offer even if Koshy had not told her that Waggoner was in Kentucky, whether Koshy misrepresented Waggoner's custodial status had no bearing on the advice Morris gave to Ivory, which is the only basis for Ivory's current § 2255 claim. We therefore deny Ivory's request for discovery. *See Williams*, 380 F.3d at 976 (district court did not abuse its discretion in denying discovery where the petitioner failed to show "that the requested discovery could yield evidence enabling Williams to prevail on his ineffective assistance [of counsel] claim").

## CONCLUSION

For the foregoing reasons, Ivory's Motion for Leave to Conduct Discovery (Civ. Dkt. No. 91) is denied. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: January 5, 2023