## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

GEORGE IVORY,                           )
                                        )
              Petitioner,               )
                                        )          No. 3:18-cv-00537
       v.                               )
                                        )          Judge Marvin E. Aspen
UNITED STATES OF AMERICA,               )
                                        )
              Respondent.               )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

In this proceeding brought under 28 U.S.C. § 2255, George Ivory moves to add a claim asserting that his guilty plea was involuntary under *Brady v. United States*. (Defendant's Motion to Amend Petition ("Mot. to Amend") (Civ. Dkt. No. 101).)[1] He also purports to renew his motion for discovery to support theories of relief under *Brady v. Maryland* and *Brady v. United States*. (Defendant's Renewed Motion for Discovery and Defendant's Reply to the Government's Response to His Motion to Amend His Petition ("Reply to Mot. to Amend") (Civ. Dkt. No. 106).) For the following reasons, we deny both motions.

## BACKGROUND

Our opinion denying Ivory's motion for leave to conduct discovery (see January 6, 2023 Memorandum Opinion and Order ("Jan. 6, 2023 Op.") (Civ. Dkt. No. 103)) recites much of the relevant background. We repeat, elaborate on, and add background only as necessary.

---

[1] Citations to "Civ. Dkt. No." refer to Ivory's § 2255 case, Case No. 3:18-cv-00537 (M.D. Tenn.), and citations to "Crim. Dkt. No." refer to Ivory's criminal case, Case No. 3:15-cr-00075-1 (M.D. Tenn.). For ECF filings, we cite to the page number(s) set forth in a document's ECF footer.

In July 2015, the Government charged Ivory with six criminal counts relating to incidents that took place in March 2015 (Counts 5 and 7) and May 2015 (Counts 1, 2, 3, and 4). (Jan. 6, 2023 Op. at 1–2.) On November 10, 2016, and on the advice of his counsel, Kathleen Morris, Ivory pled guilty to Counts 1–4 pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), whereby he agreed to a sentence of 25 years in custody and 5 years of supervised release. (*Id.* at 4–5.) In February 2017, Morris withdrew as Ivory's counsel due to a non-waivable conflict of interest. (*Id.* at 5.) Cynthia Sherwood was appointed as Ivory's new counsel. (*Id.*)

On September 7, 2017, we sentenced Ivory to 25 years of imprisonment and 5 years of supervised release. (Crim. Dkt. No. 223.) We entered judgment on the sentence on September 19, 2017. (Crim. Dkt. No. 224.) On January 16, 2018, Ivory filed a notice of appeal, which the Sixth Circuit dismissed as untimely. (Crim. Dkt. Nos. 229, 231.)

In June 2018, Ivory moved *pro se* to vacate his sentence under 28 U.S.C. § 2255. (Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Mot.") (Civ. Dkt. No. 1).) In his motion, Ivory alleged that Sherwood, his counsel at sentencing and for any appeal, rendered ineffective assistance by failing to file a timely notice of appeal. (*Id.* at 4, 9–10, 13.) We ordered an evidentiary hearing and directed the federal defender's office to appoint counsel for Ivory. (Jan. 6, 2023 Op. at 5.) In May 2019, Ivory, represented by his current counsel, moved to amend his § 2255 motion to add a claim that Morris provided ineffective assistance in advising him to plead guilty. (*Id.*) We granted the motion. (*Id.*) Ivory then moved to expand the evidentiary hearing to include his claim against Morris. (*Id.*) We granted this motion as well. (*Id.*)

In April 2021, we granted Ivory's motion to withdraw his claim against Sherwood, which left his claim against Morris as the only claim at issue in this § 2255 proceeding. (*Id.* at 5–6.) Ivory contends that there was no physical proof against him, and that Morris had developed useful impeachment evidence against the putative witnesses, as well as useful mitigation evidence from a doctor's evaluation of Ivory. (*Id.* at 6.) Accordingly, Ivory claims, Morris should have sought to dismiss the charges or advised Ivory to go to trial based on the lack of evidence. (*Id.*) Instead, Morris failed to adequately investigate the evidence against him and unreasonably advised him to accept a 25-year sentence. (*Id.*) This deficient performance prejudiced him, Ivory continues, because absent Morris's advice, he would have proceeded to trial. (*Id.*)

After continuing the evidentiary hearing multiple times, we set the date of the hearing for October 13, 2022. (*Id.*) The night before the hearing, at 10:18 p.m., Ivory filed a motion for leave to conduct discovery based on recently discovered evidence. (Petitioner's Motion for Leave to Conduct Discovery ("Mot. for Discovery") (Civ. Dkt. No. 91); Transcript of October 13, 2022 Hearing[2] ("Oct. 13, 2022 Hr'g Tr.") (Civ. Dkt. No. 105) at 2:9–14 (assertion by Ivory's counsel that he filed the motion for discovery "based on some things I've learned in the last couple of days").)

The impetus for Ivory's motion was two declarations dated October 12, 2022. (October 12, 2022 Declaration of Kathleen Morris ("Oct. 12 Morris Decl.") (Civ. Dkt. No. 91-1); October 12, 2022 Declaration of Michelle Hendrix ("Oct. 12 Hendrix Decl.") (Civ. Dkt. No. 91-2).) The first declaration was from Morris, who states that Sunny Koshy, the former Assistant U.S. Attorney who prosecuted Ivory's criminal case, told her on November 7, 2016, that "he 'had

---

[2] The cover page and first paragraph of the transcript incorrectly state that the hearing took place on October 14, 2022.

Waggoner in Kentucky.'" (Oct. 12 Morris Decl. ¶ 8.) Morris understood this statement to mean that Donta Waggoner, Ivory's cousin, "was in one of the Kentucky jails, being held as a material witness for the trial, or perhaps was being held on undisclosed federal charges." (*Id.* ¶¶ 8, 9.) According to Morris, Koshy also showed her "a page or two" of Waggoner's grand-jury testimony that day, which "showed that Waggoner essentially told the same story as" another witness, making Waggoner "a very important witness." (*Id.* ¶ 8.) Morris further states that Koshy told her a few days before that the testimony of White Boy (whose name was not disclosed to her) "had 'made quite an impression' on the grand jury." (*Id.* ¶ 7.) The second declaration was from Michelle Hendrix, the Federal Public Defender's Chief Investigator. (Oct. 12 Hendrix Decl. ¶ 1.) Hendrix states that she was asked to determine whether, in October or November 2016, Waggoner was in custody in any of the detention centers in Kentucky that hold detainees for this District. (*Id.* ¶ 2.) From October 7 through October 11, 2022, she communicated with employees at four detention centers in Kentucky, whose responses showed that Waggoner had never been in custody at any of the centers. (*Id.* ¶¶ 3–4; *id.* at Attachment 1.) Hendrix also reviewed Waggoner's CLEAR report and determined that he had never been prosecuted in Kentucky state court. (*Id.* ¶ 5.)

Ivory asserted that these declarations provided a basis to obtain discovery related to whether Koshy affirmatively misrepresented that Waggoner was in custody, which, if proven, would support his ineffective-assistance-of-counsel claim against Morris. (Mot. for Discovery at 6–7.) Ivory also asserted that this alleged misrepresentation could support a claim under *Brady v. Maryland*, 373 U.S. 83 (1963) if it was "part of a larger effort [by Koshy] to withhold facts he knew about Waggoner that would be useful impeachment." (*Id.* at 7.) Good cause also existed to allow discovery into a *Brady v. Maryland* claim, Ivory continued, because the transcript of

4

Waggoner's grand-jury testimony showed that Koshy—by showing Morris only a page or two of favorable testimony—withheld other testimony that was unfavorable. (*Id.*)

In view of Ivory's motion for discovery, we continued the evidentiary hearing and ordered briefing on the motion. (Jan. 6, 2023 Op. at 6.) The Government filed a response to Ivory's motion that was accompanied by another declaration from Morris. (United States' Response in Opposition to Petitioner George Ivory's Motion to Conduct Discovery (Civ. Dkt. No. 99); November 16, 2022 Declaration of Kathleen Morris ("Nov. 16 Morris Decl.") (Civ. Dkt. No. 99-1).) In this later declaration, Morris stated that she would have advised Ivory to plead guilty even if Koshy had *not* told her that he had Waggoner in Kentucky. (Nov. 16 Morris Decl. ¶ 6.) Ivory's reply to the Government's response did not explain how the discovery he sought could establish his claim against Morris in light of her November 16 declaration. (Jan. 6, 2023 Op. at 8.) Nor did the reply strongly press Ivory's prior assertion that a *Brady v. Maryland* claim based on Koshy's alleged failure to disclose impeachment material could be viable. Instead, Ivory switched gears, arguing primarily that Koshy's alleged misconduct and the requested discovery supported an involuntary plea claim under *Brady v. United States*, 397 U.S. 742 (1970)—a claim distinct from Ivory's claim against Morris and any claim based on an alleged violation of *Brady v. Maryland*. (*See generally* Defendant's Reply to Response to His Motion for Leave to Conduct Discovery ("Reply to Mot. for Discovery") (Civ. Dkt. No. 100).) As already noted, we denied Ivory's motion for discovery.

On December 1, 2022, the same day he filed his reply to his motion for discovery, Ivory filed the present motion to amend.

## LEGAL STANDARD

Ivory's motion to amend his § 2255 motion is governed by Federal Rule of Civil Procedure 15, which instructs courts to "freely give leave" to amend "when justice so requires."

Fed. R. Civ. P. 15(a)(2); *United States v. Clark*, 637 F. App'x 206, 208 (6th Cir. 2016). When "determining whether to grant a motion to amend" under this rule, a court generally should consider several factors, including whether the amendment would unduly prejudice the opposing party and whether the amendment would be futile. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). Even so, Rule 15 cannot be used to circumvent the statute of limitations that applies to claims brought under § 2255. *See Hill v. Mitchell*, 842 F.3d 910, 926 (6th Cir. 2016).

## ANALYSIS

### I.      Ivory's Renewed Request for Discovery

At the outset, we address Ivory's renewed request for discovery. In his reply brief, Ivory renews his request for discovery to support theories of relief under *Brady v. Maryland* and *Brady v. United States*, arguing that he can seek discovery relating to these theories even though they are not currently before us. (Reply to Mot. to Amend at 2–7.) He also argues that we should grant his request for discovery before we rule on his motion to amend. (*Id.* at 3–4, 8.) In essence, Ivory argues that we should allow him to take discovery to find out the bases for prosecutorial misconduct claims before the claims are even in the case.

We disagree. A prisoner is not entitled to discovery before he moves for relief under § 2255. *United States v. Tamayo*, 238 F.3d 425, 2000 WL 1871673, at *1 (6th Cir. 2000) (unpublished table decision); *United States v. Cuya*, 964 F.3d 969, 974 (11th Cir. 2020). That is, a prisoner is not entitled to discovery to develop the facts and claims that he might want to include in his § 2255 motion. *See* Rule 2(b)(1)–(2) of the Rules Governing Section 2255 Proceedings ("§ 2255 Rules") (requiring a § 2255 motion to "specify all the grounds for relief available to the moving party" and "state the facts supporting each ground"). By extension, a prisoner who has already filed a § 2255 motion is not entitled to discovery to develop a factual basis for claims that he might want to add to the proceeding. *See Taukitoku v. Filson*, No. 3:16-

6

cv-00762-HDM-CSD, 2022 WL 1078657, at *2 (D. Nev. Mar. 30, 2022) ("[T]he purpose of discovery in a habeas proceeding is not to develop new claims, but, rather, to develop factual support for specific allegations contained in existing claims.").  Otherwise, a § 2255 movant could improperly use discovery as a fishing expedition for proof of other grounds for relief.  *See Cuya*, 964 F.3d at 974 (recognizing "the general admonition against allowing federal prisoners to use discovery in habeas proceedings as a fishing expedition"); *Wills v. United States*, Nos. 2:18-CV-020, 2:16-CR-055, 2020 WL 1963509, at *4 (E.D. Tenn. Apr. 23, 2020) (§ 2255 Rule 6 "does not permit a fishing expedition masquerading as discovery" (quotation marks omitted)).

Our conclusion is supported by the Federal Rules of Civil Procedure, which apply "to the extent that they are not inconsistent with any statutory provisions" or the § 2255 Rules.  § 2255 Rule 12.  The Federal Rules of Civil Procedure do not permit a plaintiff to use the discovery process to develop claims that are not included in the complaint.  *Durand v. Hanover Ins. Grp., Inc.*, 294 F. Supp. 3d 659, 688 (W.D. Ky. 2018) ("[A] party is to be held to discovery within the scope of the claims and defenses actually asserted in the pleadings, and [it] may not employ discovery as a means of investigating whether additional claims might be available."); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 9491228, at *3 (N.D. Ohio Dec. 30, 2015) ("Rule 26(b)(1) confines discovery to the claims and defenses asserted in the pleadings[.]" (cleaned up)); Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (explaining that parties are not entitled "to discovery to develop new claims or defenses that are not already identified in the pleadings").  Given that a prisoner in a § 2255 proceeding is *less* entitled to discovery than litigants in other federal civil cases, *Keilholtz v. United States*, No. 2:20-CV-176, 2021 WL 5177599, at *3 (E.D. Tenn. July 7, 2021), we do not see why Ivory should be allowed to seek discovery that the typical civil litigant cannot.

7

Ivory's arguments for obtaining discovery into claims that have not yet been asserted do not convince us otherwise. First, the fact that § 2255 Rule 6(b) does not expressly require the prisoner's reasons for requesting discovery to relate to an already pending claim does not preclude such a requirement. To the contrary, § 2255 Rule 6(a) authorizes a judge, upon a showing of good cause, to allow discovery under the Federal Rules of Civil Procedure "or in accordance with the practices and principles of law," and both the Federal Rules and caselaw support requiring habeas discovery to relate to an already pending claim.

Second, the Supreme Court's decision in *Bracy v. Gramley*, 520 U.S. 899 (1997) cannot bear the weight Ivory places on it. In *Bracy*, the Court explained that the "good cause" standard for discovery in a § 2254 proceeding is satisfied "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief[.]" 520 U.S. at 908–09 (quotation marks omitted). Ivory contends that because this standard "does not require a showing tied to any particular already-pending 'claim,'" no such showing is necessary. (Reply to Mot. to Amend at 2.) But the petitioner in *Bracy* sought discovery related to a judicial bias claim that was included in his habeas petition, 520 U.S. at 902, 905–06, so the Court had no reason to consider the propriety of discovery into claims *not yet asserted* by the petitioner. Nor does *Bracy* authorize Ivory to root through the Government's files for "documents that might show additional misconduct" by the Government. (*See* Reply to Mot. to Amend at 6 (citing *Bracy*, 520 U.S. at 908–09); *see also* Reply to Mot. for Discovery at 10 (asserting that the petitioner in *Bracy* "was entitled to discovery to look for further governmental misconduct").) Rather, *Bracy* held that the habeas petitioner could conduct discovery to attempt to prove specific allegations of misconduct that he had already identified and supported with some evidence. *See* 520 U.S. at 902, 906–09;

8

*Hubanks v. Frank*, 392 F.3d 926, 933–34 (7th Cir. 2004) (explaining that the petitioner in *Bracy* demonstrated good cause for discovery "to prove his claim that corruption on the bench had deprived him of his right to a fair trial . . . by submitting the trial judge's indictment for fixing cases, proof of his own attorney's admitted complicity in the scheme, and evidence that cases directly before and after his had been fixed").  Nothing about *Bracy*'s holding suggests that Ivory can conduct discovery to find evidence that might support allegations of additional wrongdoing.

Finally, the district court decision cited by Ivory, *Sapp v. Jenkins*, does not persuade us that Ivory is entitled to the discovery he seeks.  For one thing, *Sapp* did not analyze whether it is appropriate to allow discovery regarding claims that have not yet been added to a habeas case.  *See* No. 2:17-cv-1069, 2021 WL 632922, at *1–2 (S.D. Ohio Feb. 17, 2021).  In any event, *Sapp* is distinguishable.  In that case, a habeas petitioner wanted to add two claims based on documents he obtained through a public records request, and the court allowed the petitioner to seek discovery to determine whether the two proposed claims would be timely.  *See id.*  Unlike the petitioner in *Sapp*, Ivory does not seek discovery to show the timeliness of a proposed claim that is based on information already in his possession.  Instead, Ivory wants discovery so he can attempt to find other instances of alleged prosecutorial misconduct to bolster his proposed claim and, perhaps, expand on it.  (*E.g.*, Mot. to Amend at 2 ("Further discovery might reveal . . . with more specificity, that the prosecutor withheld exculpatory or impeachment evidence, or committed other acts of misconduct."); Reply to Mot. to Amend at 1 ("The Court should grant discovery of part of the prosecution file to ascertain whether there was [] additional misconduct."); *id.* at 3 ("Ivory has sought discovery of records from the prosecutor's file that would show whether the other statements the prosecutor made to prompt Ivory's plea at the same time were likewise false or otherwise misleading."); *id.* at 6 (asserting that he should be

9

permitted to obtain "documents that might show additional misconduct").) And that is not the purpose of discovery in habeas proceedings. *Fetherolf v. Shoop*, No. 2:19-cv-00168, 2019 WL 4871429, at *8 (S.D. Ohio Oct. 3, 2019) (noting that it is a "well-settled principle that habeas petitioners are not entitled to go on fishing expeditions in search of damaging evidence").

In sum, there is no basis to permit Ivory to seek discovery related to his proposed *Brady v. United States* claim before the claim is part of this proceeding, let alone a *Brady v. Maryland* claim that Ivory has not even sought to add to the case. We therefore deny Ivory's renewed request for discovery into both his *Brady v. United States* and *Brady v. Maryland* theories.

## II.    Ivory's Motion to Amend

We next turn to Ivory's motion to amend. Ivory seeks to add a claim alleging that his guilty plea was not knowing, intelligent, and voluntary. (Mot. to Amend at 3.) "If a defendant's guilty plea is not voluntarily, intelligently, and knowingly made, the plea violates the Due Process Clause and is therefore void." *Plumaj v. Booker*, 629 F. App'x 662, 664–65 (6th Cir. 2015). Under *Brady v. United States*, a prosecutorial misrepresentation might render a guilty plea involuntary. 397 U.S. 742, 755, 757 (1970); *Robertson v. Lucas*, 753 F.3d 606, 620 (6th Cir. 2014). Ivory proposes the following claim based on *Brady v. United States*:

> Petitioner George Ivory's guilty plea was not knowing, intelligent, and voluntary under *Brady v. United States*, 397 U.S. 742 (1970) because, in about November 2016, it was induced by the prosecutor's misconduct, which included but was not necessarily limited to, making affirmative misrepresentations about prosecution witnesses, their testimony, and/or their availability for trial, and deliberately withholding impeachment and/or exculpatory information.

(Mot. to Amend at 3.)

Ivory argues that we should add this claim to his § 2255 case because the existing record demonstrates that Koshy (1) affirmatively represented that he had Waggoner in custody when he

did not; (2) showed a portion of Waggoner's grand-jury testimony while deliberately withholding the remainder of the grand-jury transcript, which contained contradictory testimony; and (3) deliberately withheld the name of White Boy, which could have led to the discovery of impeachment material.  (*Id.* at 1–3; Reply to Mot. for Discovery at 1–5.)  Ivory also contends that further discovery might reveal that Koshy's statement that White Boy "had 'made quite an impression' on the grand jury" (Oct. 12 Morris Decl. ¶ 7) was false, as well as other acts of prosecutorial misconduct, including the withholding of exculpatory or impeachment evidence. (Mot. to Amend at 1–2; Reply to Mot. for Discovery at 5–6, 11.)

In response, the Government argues that because Ivory's proposed *Brady v. United States* claim does not relate back to either Ivory's now-withdrawn claim against Sherwood or his ineffective-assistance-of-counsel claim against Morris, the proposed claim is barred by § 2255(f)'s one-year statute of limitations.  (United States' Response in Opposition to Ivory's Motion to Amend the Petition (Civ. Dkt. No. 104) at 1–3.)  And even if the claim is not time-barred, the Government continues, allowing Ivory to pursue it would substantially prejudice the Government.  (*Id.* at 3–4.)

Independent of timeliness or potential prejudice to the Government, many of the alleged bases for Ivory's proposed involuntary plea claim do not justify adding the claim to this proceeding.  First, Ivory's proposed claim relies on assertions that are factually unsupported. Although Ivory supports his assertion that Koshy misrepresented Waggoner's custodial status with the declarations from Morris and Hendrix, he provides no factual basis for his assertion that Koshy misrepresented anything else, including the impact of White Boy's grand-jury testimony. Similarly, Ivory identifies a factual basis for his assertion that Koshy failed to disclose Waggoner's grand-jury transcript and White Boy's name (Morris's declaration) but not for his

assertion that Koshy failed to disclose other information. Ivory's unsupported assertions do not provide a reason to grant his motion. *Thomas v. United States*, 85 F.3d 629, 1996 WL 262940, at *1 (6th Cir. 1996) (unpublished table decision) (prisoner's unsupported and speculative claim did not warrant § 2255 relief); *Lawson v. United States*, 81 F.3d 160, 1996 WL 132184, at *1–2 (6th Cir. 1996) (unpublished table decision) (same); *United States v. Maxton*, 796 F. App'x 542, 545 (10th Cir. 2019) ("Mere speculation, unsupported by facts, does not entitle Maxton to § 2255 relief."); *Jones v. United States*, Nos. 1:07-CR-25-HSM-SKL-1, 1:12-CV-94-HSM, 2017 WL 563984, at *7 (E.D. Tenn. Feb. 10, 2017) (allegation that was not supported by any evidence fell "short of the level of proof necessary to succeed" on a § 2255 motion).

In coming to this conclusion, we acknowledge Ivory's contention that discovery might uncover proof of these assertions. (*See, e.g.*, Reply to Mot. to Amend at 1, 3–4.) But as already discussed, Ivory is not entitled to use the discovery process to develop allegations for a potential claim. Rather, he must assert a claim supported by specific factual allegations *before* he can obtain discovery on those allegations. *See Thomas v. United States*, 849 F.3d 669, 680–81 (6th Cir. 2017) (§ 2255 movant's speculative assertion "that the Government withheld evidence that it was obligated to disclose" did not warrant discovery into the assertion); *United States v. Faulcon*, No. 1:17-cr-10106-JDB-1, 2021 WL 4888330, at *1 (W.D. Tenn. Oct. 19, 2021) ("In the absence of a pending petition and specific factual allegations, Faulcon cannot establish good cause for discovery."); *Bates v. United States*, No. 1:13-cv-316/1:06-cr-69, 2014 WL 12826589, at *2 (E.D. Tenn. Apr. 16, 2014) ("Habeas petitioners may not use federal discovery for fishing expeditions to investigate mere speculation." (quotation marks omitted)).

We also find unpersuasive Ivory's contention that the evidence showing that Koshy misrepresented Waggoner's custodial status and failed to disclose the entirety of Waggoner's

grand-jury testimony provides a basis to find that other things Koshy said and did during the plea negotiations were improper. (*See* Reply to Mot. to Amend at 1, 6.) Although the Sixth Circuit has endorsed judicial reliance on the "false in one, false in all" doctrine to make credibility determinations in the immigration context, *Arias-Hernandez v. Sessions*, 685 F. App'x 372, 373, 377–78 (6th Cir. 2017), we decline to let this doctrine be used as a substitute for specific factual allegations in the § 2255 context. Allowing one or two factually supported allegations of misconduct to provide the basis for proceeding on unsupported and unspecified assertions of *other* misconduct would permit a prisoner to circumvent the rule that "[b]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the government to respond to discovery or to require an evidentiary hearing." *Thomas*, 849 F.3d at 681.

Second, Ivory's proposed involuntary plea claim is futile to the extent it relies upon Koshy's alleged failure to disclose impeachment information, including his alleged failure to disclose White Boy's real name and the entirety of Waggoner's grand-jury testimony. For one thing, a failure to disclose information is not the same as an affirmative misrepresentation, and Ivory does not explain how Koshy's alleged failure to disclose information constitutes a misrepresentation that might render a plea involuntary under *Brady v. United States*. At any rate, "a defendant has no constitutional right to the disclosure of impeachment information before entering a plea agreement." *United States v. Cottage*, 307 F.3d 494, 500 n.5 (6th Cir. 2002) (citing *United States v. Ruiz*, 536 U.S. 622 (2002)). Impeachment information is not special with "respect to whether a plea is *voluntary*," *Ruiz*, 536 U.S. at 629, and "[i]t is immaterial to the validity" of Ivory's guilty plea that he now asserts that undisclosed impeachment evidence might have made the Government's case weaker than he had anticipated when he pled guilty, *United States v. Wells*, 260 F. App'x 902, 904 (6th Cir. 2008). Even if the failure to disclose all of

13

Waggoner's grand-jury testimony and White Boy's name resulted in the withholding of impeachment material (or information that could have led to the discovery of impeachment material) during plea negotiations, this failure did not render Ivory's subsequent guilty plea involuntary.[3] *Ruiz*, 536 U.S. at 628–33; *United States v. Merriweather*, 728 F. App'x 498, 514 (6th Cir. 2018); *Wells*, 260 F. App'x at 904.

Thus, the only potentially cognizable basis for Ivory's proposed involuntary plea claim is his assertion that Koshy misrepresented Waggoner's custodial status. We therefore consider whether the Government's arguments demonstrate that we should not allow Ivory to add an involuntary plea claim based on this alleged misrepresentation.

We start—and end—with the Government's timeliness argument. This argument requires us to consider whether Ivory filed his motion to amend within § 2255(f)'s one-year statute of limitations and, if not, whether Ivory's proposed claim relates back to his original § 2255 motion. As discussed below, the answer is "no" in both cases, so Ivory's proposed claim is time-barred and amendment would be futile. *See Clark*, 637 F. App'x at 209 ("Because Clark's motion to amend was untimely and did not relate back to the initial § 2255 motion, the district court properly exercised its discretion in denying Clark's motion to amend."); *Hodge v. United States*, No. 3:10-00172, 2011 WL 3565227, at *8 (M.D. Tenn. Aug. 15, 2011) ("As in other civil cases, futility exists [in a § 2255 proceeding] where the statute of limitations has run, and the new claim does not relate back to the original claim.").

---

[3] Although Ivory has not moved to add a claim under *Brady v. Maryland*, he also contends that evidence showing that the prosecution withheld impeachment material could support such a claim. (Reply to Mot. to Amend at 6 ("[I]f [Ivory] could prove disclosure of White Boy's name would have led to accessing substantial impeachment material, he would make a very strong claim under *Brady v. Maryland*.").) The Supreme Court's decision in *Ruiz*, however, "entirely foreclose[s]" a claim that a prosecutor violates *Brady v. Maryland* by failing to provide impeachment evidence prior to a defendant's guilty plea. *Wells*, 260 F. App'x at 902–04.

14

**A.     Section 2255(f)**

A prisoner seeking to add a claim to his § 2255 motion generally must do so within the one-year limitations period set forth in § 2255(f).  28 U.S.C. § 2255(f); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("Any attempt to raise a new claim for [habeas] relief in a Rule 15 motion to amend pleadings is subject to [a] one-year statute of limitations."); *Allen v. United States*, No. 2:17-CV-221, No. 2:14-CR-020, 2020 WL 1902404, at *9 (E.D. Tenn. Apr. 16, 2020) (§ 2255(f)'s "provisions govern the timeliness of later-filed amendments").  This period begins "to run 'from the latest of' four possible dates." *Benitez v. United States*, 521 F.3d 625, 629 (6th Cir. 2008) (quoting § 2255(f)).  The default trigger date is "the date on which the judgment of conviction becomes final," § 2255(f)(1), as that "is the only event mentioned in Section 2255(f) that will necessarily occur in every case," *Simmons v. United States*, 974 F.3d 791, 798 (6th Cir. 2020).  "A conviction becomes final when the time for direct appeal expires and no appeal has been filed[.]" *Gillis v. United States*, 729 F.3d 641, 644 (6th Cir. 2013).

In this case, we entered judgment on Ivory's sentence on September 19, 2017 (Crim. Dkt. No. 224), which gave Ivory until October 3—14 days later—to file a notice of appeal.  *See* Fed. R. App. 4(b)(1)(A)(i).  Ivory did not file a notice of appeal by October 3, 2017, so his conviction became final on that date.  The fact that Ivory later filed an appeal that the Sixth Circuit dismissed as untimely (Crim. Dkt. Nos. 229, 231) does not alter this conclusion. *Gillis*, 729 F.3d at 644.  Thus, if § 2255(f)(1) governs, the statute of limitations expired on October 3, 2018, and Ivory's December 1, 2022 motion to amend comes more than four years after this expiration.

Ivory, however, argues that either § 2255(f)(2) or § 2255(f)(4) governs the start of the statute of limitations.[4]  (Reply to Mot. to Amend at 8–9.)  Under § 2255(f)(2), if governmental

---

[4] Ivory does not argue that the statute of limitations should be equitably tolled.  (*See* Reply to Mot. to Amend at 8–9.)

action that violates the Constitution or federal law created an impediment that prevented a prisoner from filing a § 2255 motion, the one-year limitations period does not begin until the date this impediment is removed.  28 U.S.C. § 2255(f)(2).  To invoke § 2255(f)(2), Ivory must "allege (1) the existence of an impediment to his making a motion" to add his proposed *Brady v. United States* claim, "(2) governmental action in violation of the Constitution or laws of the United States that created the impediment, and (3) that the impediment prevented" him from timely moving to add this claim.  *Simmons*, 974 F.3d at 796–97.  Under § 2255(f)(4), the statute of limitations does not begin to run until "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f)(4).  To rely upon this provision, Ivory must show that despite exercising due diligence, he could not "have discovered the factual predicate" for his proposed *Brady v. United States* claim more than a year before he filed his motion to amend.  *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013).  "When considering a petitioner's diligence, the question is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care."  *Rucker v. Genovese*, 834 F. App'x 126, 127 (6th Cir. 2020) (quotation marks omitted) (addressing 28 U.S.C. § 2244(d)(1)(D)).[5]

Ivory has not demonstrated that either § 2255(f)(2) or § 2255(f)(4) applies.  Ivory does not identify an impediment caused by an unlawful government action that prevented him from

---

[5] Section 2244(d)(1)(D), which applies to § 2254 petitions, is the similarly worded analog to § 2255(f)(4).  *Shorter v. Richard*, 659 F. App'x 227, 231 (6th Cir. 2016).  Like § 2255(f)(4), § 2244(d)(1)(D) triggers the statute of limitations on the date when "the facts underlying the petitioner's 'claim or claims presented could have been discovered through the exercise of due diligence.'"  *Smith v. Meko*, 709 F. App'x 341, 346 n.3 (6th Cir. 2017) (quoting 28 U.S.C. §§ 2244(d)(1)(D), 2255(f)(4)).  Accordingly, "[t]he Supreme Court and various circuit courts have used the 'due diligence' standard in 28 U.S.C. § 2244(d)(1)(D) of the AEDPA in analyzing the 'due diligence' standard in 28 U.S.C. § 2255(f)(4) of the AEDPA and vice versa."  *Hannigan v. United States*, 131 F. Supp. 3d 480, 492–93 n.7 (E.D.N.C. 2015) (citing cases).

16

adding a *Brady v. United States* claim earlier. *See Simmons*, 974 F.3d at 797–98 (§ 2255(f)(2) did not apply where § 2255 movant "failed to adequately allege or explain how" the purported impediment "had any bearing on his failure" to timely filing his motion). Nor does Ivory attempt to show that exercising due diligence would not have discovered the facts underlying his proposed claim before December 2021. *See Gillis*, 729 F.3d at 644–45 (§ 2255(f)(4) did not apply where prisoner failed to present facts showing what date he could have discovered the basis for his claim by using due diligence); *Rucker*, 834 F. App'x at 128 (§ 2244(d)(1)(D) did not apply where prisoner did not describe the attempts he made to secure the evidence underlying his claim). Ivory's mere assertion that it was reasonable for him "to not suspect that Mr. Koshy's representation about Waggoner's whereabouts [was] false" (Reply to Mot. to Amend at 8) does not meet his burden.

Indeed, we do not see anything in the record, including any government-created impediment, that prevented Ivory's attorney from discovering the factual predicate underlying the proposed *Brady v. United States* claim or moving to add this claim before December 1, 2021. The alleged facts underlying this claim are (1) that Koshy told Morris in November 2016 that he had Donta Waggoner in Kentucky and (2) that Waggoner was not, in fact, in federal custody in Kentucky at this time. Ivory's attorney appears to have discovered both facts shortly before the October 13, 2022 hearing: the first from interviewing Morris in preparation for the hearing, and the second from the investigation the Federal Public Defender's Chief Investigator conducted from October 7 through October 11, 2022. (*See* Oct. 12 Morris Decl. ¶ 8; Oct. 12 Hendrix Decl. ¶¶ 2–3; Oct. 13, 2022 Hr'g Tr. at 4:7–9 (assertion from Ivory's attorney that he learned the information that prompted the motion for discovery from Morris when they "were preparing for the hearing"); Reply to Mot. to Amend at 5 (asserting that Ivory's attorney "just discovered the

17

prosecutor's apparent misconduct in the few days leading up to filing the discovery motion").)
Yet Ivory's attorney has known since May 2019 that Morris would be a relevant witness in this
proceeding. (*See, e.g.*, Civ. Dkt. No. 22 (May 7, 2019 order granting Ivory's motion to add an
ineffective-assistance-of-counsel claim against Morris to his § 2255 motion); Civ. Dkt. No. 26
(May 8, 2019 request from Ivory to expand the scope of the evidentiary hearing so that he can
present his case against Morris, which "would mainly consist of eliciting testimony from Ms.
Morris, along with the submission of documents relevant to that examination").) Ivory's
attorney could have interviewed Morris, discovered Koshy's alleged misrepresentation about
Waggoner's custodial status, requested an investigation into Waggoner's custodial status, and
moved to add a claim based on the results of this investigation at any time between May 2019
and December 2021. He did not, and Ivory provides no justification for his failure to do so.
Thus, neither § 2255(f)(2) nor § 2255(f)(4) makes Ivory's proposed claim timely. *See Simmons*,
974 F.3d at 797–98 (§ 2255(f)(2) did not apply because the § 2255 movant failed to allege facts
showing that the purported government impediment prevented him from filing his motion
earlier); *Jefferson*, 730 F.3d at 548–49 (§ 2255(f)(4) did not apply to a prisoner's ineffective-
assistance-of-counsel claim because the prisoner could have discovered the underlying factual
predicate several years before filing the claim).

The cases cited by Ivory do not compel a different result. (*See* Reply to Mot. to Amend
at 8–9 (citing *Banks v. Dretke*, 540 U.S. 668, 696 (2004), *Willis v. Jones*, 329 F. App'x 7, 17 (6th
Cir. 2009), and *Rinaldi v. Gillis*, 248 F. App'x 371, 380 (3d Cir. 2007)).) Although the Supreme
Court in *Banks* rejected a rule "declaring 'prosecutor may hide, defendant may seek,'" 540 U.S.
at 696, concealment by the prosecution is not at issue here. Even if Koshy represented that
Waggoner was in federal custody, there is no suggestion that he hid information showing that

this representation was untrue.  Ivory's attorney could have investigated the truth of Koshy's representation between May 2019 and December 2021 just as easily as he did in October 2022.

*Willis* and *Rinaldi* are also distinguishable.  In both cases, the prisoner filed a § 2254 petition asserting *Brady v. Maryland* claims based on the prosecution's failure to disclose *Brady* material. *Willis*, 329 F. App'x at 10, 16 (failure to disclose impeachment evidence); *Rinaldi*, 248 F. App'x at 372, 376 (failure to disclose exculpatory evidence).  In the circumstances before it—where the state had previously represented that it did not have impeachment evidence in its files—the Sixth Circuit in *Willis* found that the one-year limitations period did not begin to run until the state disclosed the impeachment evidence to the prisoner.  329 F. App'x at 16–17 & n.11.  The Third Circuit in *Rinaldi* similarly found that the one-year limitations period began ticking when the prisoner received the exculpatory information from the prosecution.  248 F. App'x at 378–80. Unlike in *Willis* and *Rinaldi*, we are not faced with a situation where the prisoner did not (or could not) discover the basis for his claim until the prosecution produced information.  *See Willis*, 329 F. App'x at 16 ("Willis had no way to know that evidence . . . that demonstrated the misstatement even existed until the state disclosed it.").  To the contrary, Ivory discovered the basis for his proposed *Brady v. United States* claim *despite* the Government's failure to provide information regarding the representation at issue.  (*See* Mot. for Discovery at 4–5.)  Thus, *Willis* and *Rinaldi* do not help Ivory's argument.  *See Jefferson*, 730 F.3d at 542–43, 547 (distinguishing *Willis* and *Rinaldi* because the prisoner filed his § 2255 motion before the government disclosed certain impeachment information, and he could not "logically argue that he did not discover the facts supporting the claims" presented in this motion until the government's disclosure (quotation marks omitted)).

19

We also reject two related arguments made by Ivory. First, Ivory argues that we cannot decide the timeliness of his proposed *Brady v. United States* claim until he conducts discovery to see if there is other misconduct to support the claim. (Reply to Mot. to Amend at 4.) Not so; the discovery of new information "that merely supports or strengthens a claim that could have been properly stated without the discovery . . . is not a factual predicate for purposes of triggering the statute of limitations under § 2244(d)(1)(D)" or § 2255(f)(4). *Jefferson*, 730 F.3d at 547 (quotation marks omitted); *McWhorter v. United States*, No. 3:16-cv-01942, 2018 WL 3770065, at *4 (M.D. Tenn. Aug. 9, 2018). And here, Ivory has already stated a potential *Brady v. United States* claim without any additional discovery. Second, Ivory appears to argue that under § 2255(f)(2) and § 2255(f)(4), the statute of limitations has not yet been triggered because he is still learning about the alleged misconduct at issue. (*See* Reply to Mot. for Discovery at 9 n.4 (contending that § 2255(f) tolls the limitations period "until learning of the misconduct, which Ivory remains in the process of doing"); Reply to Mot. to Amend at 8 ("Ivory is in the midst of developing his claim of prosecutorial misconduct under *Brady v. United States*.").) But the factual basis for that portion of a *Brady v. United States* claim that we would allow into the case (if timely and not prejudicial) is Koshy's alleged misrepresentation about Waggoner's custodial status. Ivory learned about this alleged misconduct before moving to amend, and he could have learned about it as early as May 2019. *See Jefferson*, 730 F.3d at 547 (rejecting the prisoner's argument that he did not discover the factual predicate for his claims under § 2255(f)(4) until *after* he filed his § 2255 motion).

Ivory has failed to show that either § 2255(f)(2) or § 2255(f)(4) provides a basis to find that his motion to amend is timely. Thus, under § 2255(f)(1), the one-year limitations period began running on the date Ivory's conviction became final, October 3, 2017, and Ivory's

December 1, 2022 motion to amend comes more than four years too late unless his proposed *Brady v. United States* claim relates back to his original § 2255 motion.  *See Howard*, 533 F.3d at 475; *Clark*, 637 F. App'x at 208–09.

   **B.    Relation Back**

Relevant here, a proposed claim "relates back to the date of the original pleading" if the claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  A proposed amendment "that 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth'" does not satisfy this standard.  *Howard*, 533 F.3d at 476 (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).  Stated differently, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle*, 545 U.S. at 659.  "[A]ny 'new' facts [in a proposed claim] generally may differ only in specificity (not in kind) from those originally alleged."  *Watkins v. Stephenson*, 57 F.4th 576, 581 (6th Cir. 2023).  Ivory bears the burden of showing that his proposed *Brady v. United States* claim relates back.  *Mattingly v. R.J. Corman R.R. Grp., LLC*, No. 5:19-CV-00170-JMH, 2021 WL 7081113, at *2 (E.D. Ky. Oct. 6, 2021); *White v. United States*, Nos. 3:13-CR-71-TAV-HBG, 3:15-CV-502-TAV, 2019 WL 1140175, at *3 (E.D. Tenn. Mar. 12, 2019).

Ivory again has not met his burden.  Ivory argues that his ineffective-assistance-of-counsel claim against Morris is based, in part, on the theory that she "'inadequately investigat[ed] the evidence against Ivory before advising him to accept the plea agreement'" and that this inadequate investigation potentially includes "Morris's failure to discover that Koshy spoke falsely when claiming he had Waggoner in custody in a jail in Kentucky."  (Reply to Mot. to Amend at 9 (quoting Petitioner's Proposed Findings of Fact and Conclusions of Law (Civ. Dkt. No. 38) at 4).)  Because this falsehood is central to his proposed *Brady v. United States*

claim, Ivory continues, his claim against Morris and his proposed claim "share a common core of operative facts." (*Id.*)

But Ivory does not address the relevant inquiry for purposes of relation back: does his proposed claim relate back to his original § 2255 motion? Rule 15 allows relation back to one specific document—the "original pleading." Fed. R. Civ. P. 15(c)(1)(B); *Watkins*, 57 F.4th at 580. In a § 2255 proceeding, the original pleading is the prisoner's initial § 2255 motion. *See Mayle*, 545 U.S. at 655 ("The 'original pleading' to which Rule 15 refers is . . . the petition in a habeas proceeding."); *Clark*, 637 F. App'x at 209 (affirming denial of untimely motion to amend that "did not relate back to the initial § 2255 motion"). Ivory does not tie his proposed claim to any facts alleged in his original § 2255 motion; in fact, he does not even cite the motion. (*See* Reply to Mot. to Amend at 9.) This failure dooms Ivory's relation back argument.

So does Ivory's decision to argue for relation back based solely on alleged facts disclosed in his proposed findings of fact and conclusions of law. (*See id.*) Even if we treated this as an "original pleading" for relation back purposes, Ivory did not file this document until October 3, 2019, a year after the statute of limitations expired. Thus, the facts and assertions disclosed therein cannot provide a basis to find Ivory's proposed *Brady v. United States* claim timely. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) ("Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a *timely filed* original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." (emphasis added)); *Boggs v. 3M Co.*, 527 F. App'x 415, 418 (6th Cir. 2013) (the relation back doctrine does not allow a plaintiff to "save one untimely claim by tacking it onto an untimely initial complaint").

Notwithstanding Ivory's failure to meet his burden, our independent comparison of Ivory's original § 2255 motion to his proposed claim confirms that relation back is inappropriate. Ivory's § 2255 motion raised one ground for relief—ineffective assistance of counsel based on Sherwood's failure to file a timely notice of appeal after Ivory was sentenced in September 2017. (*See* § 2255 Mot. at 4, 9–10, 13–17.) Ivory's motion to amend seeks to add a new ground for relief (a claim that his plea was involuntary) based on a different type of conduct (an alleged misrepresentation about a witness's custodial status) committed by a different person (the prosecutor) at a different time (in November 2016, before Ivory pled guilty and was sentenced). These differences preclude relation back. *Howard*, 533 F.3d at 476 ("A claim that 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth' will not so relate back." (quoting *Mayle*, 545 U.S. at 650)); *see, e.g.*, *Watkins*, 57 F.4th at 581 (no relation back where the "amended claims alleged errors in the way that the trial court managed the trial procedure, whereas the original claims alleged errors at the later sentencing, by [the prisoner's] trial counsel, or by the prosecutor"); *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850–51 (6th Cir. 2017) (no relation back where the prisoner's supplemental § 2254 petition alleged that counsel failed to order a psychiatric evaluation during trial, which presented "a distinct 'episode'" from the same "[c]ounsel's conduct in investigating before trial and presenting a defense to the jury during trial," which was the basis for the original petition); *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (no relation back where the claims in the prisoner's original § 2255 motion, which were based on counsel's alleged errors before trial and during sentencing, addressed "a separate occurrence in both time and type" and involved an "entirely distinct type[] of attorney misfeasance from the claim asserted in his proposed amendment," which was based on counsel's failure to file an appeal (cleaned up)).

Because Ivory seeks to tie his proposed claim to allegations regarding Morris, we also have considered whether the original § 2255 motion's assertion that Morris ignored Ivory's request for a suppression hearing (see § 2255 Mot. at 14, 19–20) provides a basis for relation back. It does not. Even if we liberally construe this assertion as raising an ineffective-assistance-of-counsel claim based on Morris's failure to move for dismissal of the charges or advise Ivory to go to trial (see Civ. Dkt. No. 21 at 2 (arguing this is what Ivory meant by referring to a "suppression hearing")), this assertion does not notify the Government that statements from the prosecutor would be at issue in this proceeding. *See Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010) ("The facts alleged [in the original § 2255 motion] must be specific enough to put the opposing party on notice of the factual basis for the [later] claim."); 6A Mary Kay Kane, *Federal Practice and Procedure* § 1497 (3d ed. Apr. 2022 update) (explaining that an amendment will relate back only if the original pleading has put the opposing party "on notice regarding the claim or defense raised by the amended pleading"). Nor does this assertion set forth the same ground for relief, the same type of alleged conduct, or the same alleged perpetrator as Ivory's proposed *Brady v. United States* claim. It therefore does not support relation back.

\* \* \*

In sum, Ivory's request to add a *Brady v. United States* claim comes years after the expiration of § 2255(f)'s statute of limitations, and this proposed claim does not relate back to Ivory's original § 2255 motion. We therefore deny Ivory's motion to amend.

24

## CONCLUSION

For the foregoing reasons, Ivory's motion to amend (Civ. Dkt. No. 101) and renewed motion for discovery (Civ. Dkt. No. 106) are denied. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: February 10, 2023