# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GEORGE IVORY,     )
           )
    Petitioner,   )
           )  No. 3:18-cv-00537
   v.        )
           )  Judge Marvin E. Aspen
UNITED STATES OF AMERICA, )
           )
    Respondent.  )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

  On the advice of his counsel, George Ivory pleaded guilty to four criminal counts

pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).  We then

imposed the sentence to which Ivory had agreed: 25 years' imprisonment and 5 years' supervised

release.  Presently before us is Ivory's motion to vacate, set aside, or correct his sentence under

28 U.S.C. § 2255 due to ineffective assistance of counsel.  (Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Mot.") (Civ.

Dkt. No. 1).)[1]  For the following reasons, we deny the motion and decline to issue a certificate of

appealability.

## BACKGROUND

I.  **Ivory's Criminal Case**

  A.  **The May 1, 2015 Shooting and Subsequent Indictment**

---

[1] Citations to "Civ. Dkt. No." refer to Ivory's § 2255 case, Case No. 3:18-cv-00537 (M.D.
Tenn.).  Citations to "Crim. Dkt. No." refer to Ivory's criminal case, Case No. 3:15-cr-00075-1
(M.D. Tenn.).  For ECF filings, we cite to the page number(s) set forth in a document's ECF
footer.

On May 1, 2015, Ivory and another drug dealer referred to as "White Boy" were attempting to sell crack cocaine in the same area in North Nashville. (Plea Agreement (Crim. Dkt. No. 182) at 6–7.) They had been arguing about drug sales when Laquinta Thomas and Cecil Grissette[2] arrived in the area. (*Id.* at 7; January 20, 2017 Revised Presentence Report for George Ivory ("PSR") (Civ. Dkt. No. 83-1) ¶¶ 6–7.) Thomas and Grissette approached White Boy to buy crack cocaine, but White Boy said he was not selling due to his argument with Ivory. (*Id.*) Ivory approached Thomas and Grissette and said that no one else could sell drugs in the area while he had drugs to sell. (*Id.*) Grissette told Ivory that he was not going to buy drugs from him; in response, Ivory brandished a loaded firearm, intending to rob Grissette of the $60.00 he was going to use to buy crack cocaine from White Boy. (*Id.*) At the time, Ivory had multiple convictions for state felony offenses that were punishable by more than one year of imprisonment. (*Id.* at 9.) After Thomas told Ivory to leave Grissette alone, Ivory hit her in the head with his gun. (*Id.* at 7–8.) Ivory also hit Grissette with the gun. (*Id.* at 8.) Ivory's cousin, Donta Waggoner, tried to stop Ivory, but Ivory threatened to shoot him. (Plea Agreement at 8; PSR ¶ 8; October 12, 2022 Declaration of Kathleen Morris ("Oct. 12 Morris Decl.") (Civ. Dkt. No. 91-1) ¶ 9.) Ivory then shot Grissette. (Plea Agreement at 8.) Grissette fell to the ground, and Ivory continued to shoot him. (*Id.*) Ivory shot Grissette multiple times, including in the head. (*Id.* at 6.) Thomas ran and flagged down a police officer, but Ivory was able to leave the area with three other individuals. (*Id.* at 8.) After spending the night at a local motel, Ivory and two others discarded the gun used to shoot Grissette into the Cumberland River. (*Id.*) Ivory was arrested about one week later on related state charges. (*Id.*)

---

[2] The plea agreement refers to Thomas and Grissette as Victim 1 and Victim 2, respectively.

In connection with these actions, Ivory was charged with one count of being a felon in possession of ammunition.  (Crim. Dkt. No. 4.)  In July 2015, a seven-count superseding indictment was brought against Ivory and another individual, Anthony Coleman.  (Superseding Indictment (Crim. Dkt. No. 17).)  The superseding indictment charged Ivory with six counts:

| | | |
|---|---|---|
| Count 1: | Possession of Cocaine with Intent to Distribute (21 U.S.C. § 841(a)(1)) | |
| Count 2: | Hobbs Act Robbery and Extortion and Attempt (18 U.S.C. § 1951(b)) | |
| Count 3: | Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence and a Drug Trafficking Offense (18 U.S.C. § 924(c)(1)) | |
| Count 4: | Felon in Possession of Ammunition (18 U.S.C. §§ 922(g)(1), 924) | |
| Count 5: | Felon in Possession of a Firearm (18 U.S.C. §§ 922(g)(1), 924) | |
| Count 7: | Using, Carrying, and Brandishing a Firearm During and in Relation to a Drug Trafficking Offense (18 U.S.C. § 924(c)(1), (2)) | |

(*Id.*)[3]  Counts 1–4 related to the May 1, 2015 shooting; Counts 5 and 7 related to an incident that took place on March 23, 2015.  (*See id.*)

**B.      Pretrial Proceedings and Guilty Plea**

In August 2015, Attorney Kathleen Morris was appointed to represent Ivory pursuant to the Criminal Justice Act.  (Crim. Dkt. Nos. 26, 27; Crim. Dkt. No. 191 ¶ 1.)  Represented by Morris, Ivory pleaded not guilty to the counts in the superseding indictment.  (Crim. Dkt. No. 27.)  Judge Campbell thereafter severed trial on Counts 1–4 from trial on Counts 5–7.  (Crim. Dkt. No. 147 at 3.)  Trial on Counts 5–7 was set for November 15, 2016, and trial on Counts 1–4 was set for March 28, 2017.  (*Id.*; Crim. Dkt. No. 148 at 1.)

---

[3] Count 6 was only charged against co-defendant Coleman.  Count 7 was charged against both Ivory and Coleman.

3

After reviewing the evidence provided by the Government in discovery, Morris decided

that the charges related to the May 2015 shooting (Counts 1–4) "presented a greater risk of

conviction" to Ivory than those related to the March 2015 incident (Counts 5 and 7). (Oct. 12

Morris Decl. ¶¶ 2–3.) Even so, Morris's recollection is that there was no physical evidence tying

Ivory to the crimes charged in connection with the May 2015 shooting, nor was there any

incriminating statement from Ivory. (*Id.* ¶ 4.) Rather, the Government's only evidence seemed

to be potential witness statements. (*Id.*) Although Morris was unsure whom the Government

might call to testify against Ivory, she expected it would be Thomas and White Boy. (*Id.* ¶ 7.)

Morris further believed that she could impeach Thomas at trial with various inconsistent

statements she had made. (*Id.* ¶¶ 5–6.)

The pretrial conference for the trial on Counts 5–7 was scheduled for November 7, 2016.

(Crim. Dkt. No. 114 at 1; Crim. Dkt. No. 147 at 3.) Four days before this conference, former

Assistant U.S. Attorney Sunny Koshy told Morris that his witnesses with respect to the May

2015 shooting were Waggoner, White Boy, and "someone else," whom Morris took to mean

Thomas. (Oct. 12 Morris Decl. ¶ 7.) Koshy also told Morris that "White Boy had 'made quite

an impression' on the grand jury." (*Id.*)

The day of the pretrial conference, November 7, Koshy showed Morris one or two pages

from the transcript of Waggoner's grand jury testimony. (*Id.* ¶ 8.) According to Morris, these

"pages showed that Waggoner essentially told the same story as Thomas ultimately told, which

made him a very important witness." (*Id.*) Koshy also told Morris "that he 'had Waggoner in

Kentucky.'" (*Id.*) At the time, federal detainees were held in at least two jails in Kentucky, so

Morris understood this statement to mean "that Waggoner was in one of the Kentucky jails,

being held as a material witness for the trial, or perhaps was being held on undisclosed federal

4

charges."[4]  (*Id.*)  Koshy then "offered a binding plea agreement of 25 years to resolve the case." (*Id.*)  This offer came after prior discussions in which Koshy "had rejected more favorable terms."  (*Id.*)

The next day, Morris met with Ivory in jail and recommended that he accept the Government's plea offer.  (*Id.* ¶ 9.)  Morris made this recommendation, in part, because the evidence against Ivory "was significant and likely compelling to a jury."  (November 16, 2022 Declaration of Kathleen Morris ("Nov. 16 Morris Decl.") (Civ. Dkt. No. 99-1) ¶ 5.)  Specifically, the Government "had three witnesses—Thomas, Waggoner, and White Boy—available who would tell the same story."  (Oct. 12 Morris Decl. ¶ 9.)  Morris was particularly concerned that Waggoner's familial relationship to Ivory "would carry significant weight with the jury" and that his expected corroboration of Thomas's and White Boy's testimony would undercut Morris's impeachment of these two witnesses.  (*Id.*)  Thus, "[i]t was important to [Morris] that Waggoner was apparently certain to appear as a witness as he was being detained in Kentucky."  (*Id.*) Nonetheless, Morris "would have made the same recommendation even if" Koshy had not said that Waggoner was in Kentucky because she "would have fully expected the government to compel Waggoner's appearance and testimony at trial, just as it had compelled his testimony before the grand jury."  (Nov. 16 Morris Decl. ¶ 6.)  The 25-year sentence offered by the Government also factored into Morris's decision to recommend taking the plea offer because this sentence was, according to Morris's calculations, below the bottom of Ivory's advisory Guidelines range.  (*Id.* ¶ 5.)  Ultimately, Morris's "review of the discovery materials, [her] investigation, and [her] overall understanding of the expected testimony of the other government

---

[4] Evidence provided in Ivory's § 2255 case, however, suggests that Waggoner was not in federal or state custody at the time.  (*See* October 12, 2022 Declaration of Michelle Hendrix (Civ. Dkt. No. 91-2) ¶¶ 2–5 & Attachment 1.)

witnesses caused [her] to believe that it was in Mr. Ivory's best interests to accept the government's offer." (*Id.* ¶ 6.)

Chief Judge Sharp held a change-of-plea hearing on November 10, 2016. (Crim Dkt. No. 180; Transcript of November 10, 2016 Plea Hearing ("Plea Hr'g Tr.") (Crim. Dkt. No. 232) at 2:1–14.) Following Morris's advice, Ivory accepted the Government's plea offer and pleaded guilty to Counts 1–4 of the superseding indictment (Nov. 16 Morris Decl. ¶¶ 5, 7; Plea Hr'g Tr. at 28:12–15.) During the change-of-plea hearing, Ivory confirmed, among other things:

- He was pleading guilty to Counts 1–4 of his own free will and because he was, in fact, guilty (Plea Hr'g Tr. at 10:7–19, 13:20–14:6, 28:9–11);

- He was waiving his right to a trial and that he did not have any reservations or second thoughts about doing so (*id.* at 17:21–18:1, 19:11–16, 30:12–15);

- He understood the length of his custodial sentence if the Court accepted the plea agreement (*id.* at 16:2–7); and

- He had reviewed both his petition to enter a guilty plea and his plea agreement "page for page, line for line," with Morris and understood both documents (*id.* at 28:16–25).

Judge Sharp accepted Ivory's guilty plea and conditionally accepted the parties' plea agreement, pending presentation of the PSR. (*Id.* at 29:25–30:9; Order on Petition to Enter a Plea of Guilty (Crim. Dkt. No. 181).)

### C. Sentencing and Appeal

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed that Ivory's sentence for a guilty plea to Counts 1–4 would include 25 years' imprisonment and 5 years' supervised release. (Plea Agreement at 2, 11.) The parties also agreed that the Government would move to dismiss Counts 5 and 7 once a sentence had been imposed. (*Id.* at 2.)

After Ivory's guilty plea, the Probation Office prepared a PSR regarding Counts 1–4. The PSR set Ivory's total offense level at 36 and assigned him a criminal history category of V.

6

(PSR at 30.)  This yielded a total effective Guidelines range of 412–485 months' imprisonment: 292–365 months for Counts 1, 2, and 4, to run consecutively with 120 months for Count 3.  (*Id.* at 30–31.)  Ivory had no objections to the PSR.  (*See* Crim. Dkt. No. 220.)

In February 2017, Morris moved to withdraw as Ivory's counsel.  (Crim. Dkt. No. 191.) Chief Judge Sharp granted the motion and appointed Cynthia Sherwood as Ivory's new counsel. (Crim. Dkt. Nos. 195–96.)  The case was transferred to the undersigned shortly thereafter. (Crim. Dkt. No. 199.)

In September 2017, we sentenced Ivory to 25 years' imprisonment and 5 years' supervised release on Counts 1–4, and the Government dismissed Counts 5 and 7.  (Crim. Dkt. Nos. 223–24.)  In January 2018, Ivory filed a *pro se* notice of appeal, but the Sixth Circuit dismissed the appeal as untimely.  (Crim. Dkt. Nos. 229, 231.)

## II.    Ivory's § 2255 Case

On June 8, 2018, Ivory moved *pro se* to vacate his sentence under 28 U.S.C. § 2255, alleging that Sherwood failed to render effective assistance by failing to file a timely notice of appeal.  (§ 2255 Mot. at 4, 9–10.)  We ordered an evidentiary hearing to be held on Ivory's claim and directed the federal defender's office to appoint counsel for Ivory.  (Civ. Dkt. No. 14.)  In May 2019, Ivory, represented by his current counsel, moved to amend his § 2255 petition to add an ineffective-assistance-of-counsel claim against Morris.  (Civ. Dkt. No. 21 at 3.)  We granted the motion.  (Civ. Dkt. No. 22.)  Ivory then moved to expand the evidentiary hearing to include his claim against Morris.  (Civ. Dkt. No. 26.)  We granted this motion as well.  (Civ. Dkt. No. 33.)  The parties then submitted a joint prehearing order and stipulations, as well as their own respective proposed findings of fact and conclusions of law.  (Joint Prehearing Order and Stipulations ("Joint Prehearing Order") (Civ. Dkt. No. 37); Petitioner's Proposed Findings of

7

Fact and Conclusions of Law ("Ivory's Proposed Findings") (Civ. Dkt. No. 38); United States' Proposed Supplemental Findings of Fact and Conclusions of law (Civ. Dkt. No. 39).)

In April 2021, Ivory moved to withdraw his claim against Sherwood. (Civ. Dkt. No. 59.) We granted this motion (Civ. Dkt. No. 60), which left his ineffective-assistance-of-counsel claim against Morris as the only claim at issue in this § 2255 proceeding.

After continuing the evidentiary hearing multiple times, we set the date of the hearing for October 13, 2022. (Civ. Dkt. No. 80.) The night before the hearing, at 10:18 p.m., Ivory filed a motion for leave to conduct discovery based on recently discovered evidence. (Civ. Dkt. No. 91; Civ. Dkt. No. 105 at 2:9–14 (assertion by Ivory's counsel at the October 13 hearing that he filed the motion for discovery "based on some things I've learned in the last couple of days").) According to Ivory, this evidence indicated that former AUSA Koshy falsely implied to Morris during plea negotiations that Donta Waggoner was in federal custody. (*See* Civ. Dkt. No. 91 at 1, 3–6.) Ivory sought written and oral discovery in connection with this purported misrepresentation. (*Id.* at 8.) In view of Ivory's motion, we continued the evidentiary hearing and ordered briefing. (*See* Civ. Dkt. Nos. 92–94, 96.) While his motion for discovery was pending, Ivory filed another motion, this one to amend his § 2255 motion to add a claim that his plea was involuntary under *Brady v. United States*, 397 U.S. 742 (1970). (Civ. Dkt. No. 101.) We denied both motions (as well as Ivory's renewed motion for discovery) as set forth in our January 6, 2023 Opinion and Order (Civ. Dkt. No. 103) and our February 13, 2013 Opinion and Order (Civ. Dkt. No. 107). Thereafter, we set the evidentiary hearing for June 21, 2023. (Civ. Dkt. No. 110.)

Prior to the hearing, the parties presented the direct testimony of Ivory and Morris by way of declaration. (Civ. Dkt. No. 117-1 ("Ivory Decl."); Civ. Dkt. No. 114.) After the evidence was

presented, Ivory moved to cancel the hearing and for entry of a final judgment. (Defendant's Motion to Cancel Evidentiary Hearing and for Entry of Judgment (Civ. Dkt. No. 129).) Ivory stated in his motion that he "recognizes he cannot win" his remaining claim "without an evidentiary hearing," but seeks "a final judgment so he can proceed with an appeal of this Court's denial of his motions for discovery and for leave to amend his petition." (*Id.* at 1.) The Government had no objection. (Civ. Dkt. No. 131.) The Court granted the motion. (Civ. Dkt. No. 132.) Ivory's § 2255 motion is now ripe for resolution.

## LEGAL STANDARD

A prisoner may move the court that sentenced him to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255. *Mallett v. United States*, 334 F.3d 491, 496 (6th Cir. 2003). "To succeed on a § 2255 motion, a prisoner in custody must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *McPhearson v. United States*, 675 F.3d 553, 558–59 (6th Cir. 2012) (quoting *Mallett*, 334 F.3d at 496–97). The prisoner must prove his entitlement to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## ANALYSIS

Ivory's § 2255 claim against Morris states as follows:

> Morris committed ineffective assistance of counsel in violation of the Sixth Amendment and *Lafler v. Cooper*, 566 U.S. 156 (2012), by failing to give him reasonable professional guidance as to whether to accept the plea bargain for 25 years. Had he received reasonable professional guidance with respect to the plea bargain, he would have rejected it.

(Civ. Dkt. No. 22.) Thus, Ivory seeks relief under § 2255 on the theory that he was denied his Sixth Amendment right to effective assistance of counsel when Morris advised him to accept the

Government's plea offer. "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,'" which includes the plea-bargaining process and the entry of a guilty plea. *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)); *Lafler*, 566 U.S. at 162.

The standard for ineffective assistance of counsel claims is "rigorous" and "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381–82 (1986). To prevail on a claim for ineffective assistance of counsel, a criminal defendant must show both "deficient performance by counsel and resulting prejudice to the defendant." *Gilbert v. United States*, 64 F.4th 763, 771 (6th Cir. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). If the defendant "makes 'an insufficient showing on one'" prong, we may resolve his § 2255 claim based on that prong alone. *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).

## I. Deficient Performance

We start with the deficient-performance prong. "To establish deficient performance, the [criminal defendant] 'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.'" *Gilbert*, 64 F.4th at 771 (quoting *Strickland*, 466 U.S. at 690). The defendant then must show that these acts or omissions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This standard is measured by "prevailing professional norms." *Id.* In analyzing counsel's performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Thomas v. United States*, 849 F.3d 669, 675 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 689). The defendant bears the burden of rebutting this presumption with evidence. *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021). "In fact, even if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he

10

record does not reveal' that counsel took an approach that no competent lawyer would have chosen." *Id.* (alteration in original) (quoting *Burt v. Titlow*, 571 U.S. 12, 23–24 (2013)).

In the context of plea negotiations, defense counsel must use her "superior experience and training in the criminal law" to provide her client with a meaningful basis for deciding whether to accept a plea offer. *See Smith v. United States*, 348 F.3d 545, 552–53 (6th Cir. 2003). For example, counsel must explain the elements of the offense charged, discuss the evidence as it bears on those elements, and explain the sentencing exposure, including an exploration of the ranges of penalties under likely sentencing scenarios. *Id.* at 553. In short, defense counsel "has a clear obligation to fully inform her client of the available options." *Id.* at 552.

Ivory argues that Morris's advice to accept the Government's plea offer was deficient because the Government's "case was weak and a sentence of 25 years is commensurate with a sentence for murder." (Joint Prehearing Order at 2; Ivory's Proposed Findings at 4.) He also contends that Morris based her advice "on an unreasonably incomplete investigation" because she saw only a part of Waggoner's grand-jury transcript. (Joint Prehearing Order at 2; Ivory's Proposed Findings at 4.) These contentions, however, fail to demonstrate that Morris "took an approach that no competent lawyer would have chosen." *Dunn*, 141 S. Ct. at 2410.

First, Ivory has not shown that Morris's advice to plead guilty was objectively unreasonable in view of the strength of the Government's case. According to Ivory, the Government's case was "weak" because Morris had developed mitigating evidence showing that he "has difficulty making sound decisions," as well as impeachment evidence against the Government's witnesses, and "there was no physical proof against Ivory." (Joint Prehearing Order at 2.) But Ivory does not explain how the mitigating evidence would have made the Government's burden of proving any element of the charged crimes more difficult. Moreover,

even without physical evidence tying Ivory to the May 1, 2015 shooting, Ivory still faced the prospect of three witnesses—Thomas, Waggoner, and White Boy—all telling a jury the same story about the shooting. (*See* Oct. 12 Morris Decl. ¶ 9.) The testimony of these witnesses alone could have persuaded a jury beyond a reasonable doubt that Ivory possessed cocaine with the intent to sell, brandished a firearm intending to rob Grissette, and then shot Grissette. *See, e.g.*, *Wright v. Dallman*, 999 F.2d 174, 180 (6th Cir. 1993) (testimony of two witnesses alone was sufficient to support a guilty verdict); *United States v. Casteel*, 505 F. App'x 573, 575 (6th Cir. 2012) (same); *Starks v. Sheldon*, No. 3:12-CV-00191, 2013 WL 3992592, at *45 (N.D. Ohio Aug. 5, 2013), *aff'd*, 2014 WL 12971822 (6th Cir. Sept. 24, 2014) ("Eyewitness testimony alone is constitutionally sufficient to sustain a conviction.").

It also was not unreasonable for Morris to advise Ivory to plead guilty even if she had "developed useful impeachment evidence against the putative witnesses against Ivory." (Joint Prehearing Order at 2; *see also* Oct. 12 Morris Decl. ¶¶ 5–6 (statement from Morris that she believed Thomas could be impeached at trial with her inconsistent statements).) As Morris explained, she was concerned that Waggoner's familial relationship to Ivory (they were cousins) "would carry significant weight with the jury" and that Waggoner's expected corroboration of Thomas's and White Boy's testimony would undercut her ability to impeach these latter two witnesses. (Oct. 12 Morris Decl. ¶ 9.) This was an entirely reasonable concern. And even if Morris was able to convince the jury that Thomas and White Boy were not credible despite Waggoner's corroboration, the jury could still conclude that Waggoner's testimony alone showed beyond a reasonable doubt that Ivory was guilty of the crimes charged. *See United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012) ("[T]he testimony of a single witness is sufficient to support a conviction."); *United States v. Binder*, 26 F. Supp. 3d 656, 661 (E.D.

12

Mich. 2014) ("The testimony of a single witness is generally sufficient to demonstrate guilt beyond a reasonable doubt."). In other words, for Morris's impeachment evidence to have carried the day for Ivory, it would have had to convince the jury that not one, not two, but all three of the Government's witnesses were not telling the truth about Ivory's actions on May 1, 2015. That is a scenario on which an attorney reasonably might not want to rest her client's hopes for acquittal.

Ultimately, Ivory provides no evidentiary basis for us to find that Morris was objectively unreasonable in concluding that the evidence against Ivory was "significant and likely compelling to a jury" or that a guilty plea was in his best interests. (Nov. 16, 2022 Morris Decl. ¶¶ 5–6.) Ivory's assertion that the Government's case was weak therefore does not show deficient performance by Morris.

Second, despite Ivory's assertion that a 25-year sentence "is commensurate with a sentence for murder" (Joint Prehearing Order at 2), there was nothing unreasonable about Morris advising Ivory to agree to a sentence of this length. After Ivory pleaded guilty, the Probation Office calculated his total advisory Guidelines range for Counts 1–4 to be 412–485 months (34 years and 4 months to 40 years and 5 months). (PSR at 30–31.) If Ivory had proceeded to trial and been convicted by a jury on these counts, he likely would have faced a Guidelines range with a *minimum* of 480 months (40 years) in prison.[5] By heeding Morris's advice and pleading guilty

---

[5] In connection with the plea agreement, the Probation Office calculated a total offense level of 36 for Counts 1, 2, and 4 and a criminal history category of V. (PSR at 11–12, 18, 30.) As part of this calculation, Ivory received a three-level downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1. (*Id.* at 12.) If Ivory had proceeded to and been convicted at trial on these counts, he likely would not have received this downward departure, putting his total offense level at 39. *See United States v. Martinez*, 839 F. App'x 993, 997 (6th Cir. 2021) ("Martinez chose to go to trial, and the acceptance of responsibility reduction is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses

pursuant to a Rule 11(c)(1)(C) agreement, Ivory obtained a custodial sentence that was more than 9 years shorter than the low end of the first potential range, and 15 years shorter than the low end of the second potential range. *See Hays v. United States*, 397 F.3d 564, 568–69 (7th Cir. 2005) (counsel's advice to plead guilty was not objectively unreasonable where the defendant's sentence, had he gone to trial, could have been substantially higher because he would not have obtained a three-level downward departure for acceptance of responsibility). And that assessment does not even include the fact that Ivory's plea agreement resulted in the dismissal of Counts 5 and 7. (Crim. Dkt. No. 182 at 2; Crim. Dkt. No. 224.) Had Ivory not obtained this dismissal, he faced the prospect of an additional, mandatory consecutive sentence of at least five years based on Count 7 (using, carrying, and brandishing a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1)) alone. (PSR at 26); *see* 18 U.S.C. § 924(c)(1)(A); U.S.S.G. § 2K2.4, application note 2(A). At bottom, it was entirely reasonable for Morris to advise Ivory to take a deal for 25 years in prison where he otherwise risked receiving a sentence of 40 years at the low end. *See United States v. Smith*, 983 F.3d 1213, 1221 (11th Cir. 2020) (attorney's advice to take an offer of five years' imprisonment to avoid a possible 15-year sentence was "sound and reasonable"); *United States v. Curry*, 494 F.3d 1124, 1130 (D.C. Cir. 2007) (counsel did not perform deficiently by advising the defendant to plead

---

remorse." (quotation marks omitted)); *Bevil v. United States*, Nos. 2:06-CR-52, 2:07-CV-224, 2010 WL 3239276, at *1, *11 (E.D. Tenn. Aug. 16, 2010) (noting that defendant who had "received a three level reduction in his offense level for acceptance of responsibility" by pleading guilty would not have received that reduction "[h]ad he taken the case to trial and been convicted"). A total offense level of 39 with a criminal history category of V results in a Guidelines range of 360 months to life in prison. Tacking on the 120-month consecutive sentence required for Count 3 (*see* PSR at 13) would have then resulted in a Guidelines range of 480 months to life in prison.

14

guilty and face an estimated Guidelines range of 121 to 151 months instead of a 240-month mandatory minimum sentence if he was convicted at trial).

Finally, Ivory has not shown that Morris's failure to view the entirety of Waggoner's grand-jury transcript amounted to "an unreasonably incomplete investigation." (Joint Prehearing Order at 2; Ivory's Proposed Findings at 4.) Although "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland*, 466 U.S. at 691, we presume that the investigations Morris conducted while representing Ivory were reasonable. *Burt*, 571 U.S. at 22–23; *United States v. Currie*, 989 F.2d 501, 1993 WL 62988, at *2 (6th Cir. 1993) (table decision) ("The Supreme Court held that investigatory decisions are presumed reasonable."); *accord Strickland*, 466 U.S. at 690. We must not only give Morris the benefit of the doubt but must also "affirmatively entertain the range of possible reasons" that Morris proceeded as she did. *Gabrion v. United States*, 43 F.4th 569, 583 (6th Cir. 2022) (quotation marks omitted). To overcome the strong presumption in Morris's favor, Ivory must direct us to *evidence* showing that Morris's review of Waggoner's grand-jury transcript was objectively unreasonable. *See Burt*, 571 U.S. at 23 ("[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." (internal alteration and quotation marks omitted)).

Ivory has not met his burden. He appears to contend that Morris's failure to view the entirety of Waggoner's grand-jury transcript was unreasonable because other portions of the transcript show that Waggoner's testimony was of "dubious veracity." (*See* Civ. Dkt. No. 91 at 7.) But Ivory does not provide any evidentiary basis for us to conclude that Morris's failure to review these portions fell below "prevailing professional norms." *Strickland*, 466 U.S. at 688. In fact, Ivory's contention overlooks the fact that Morris was not entitled to see these portions of

the transcript in the regular course of pretrial discovery. *See Lambert v. Settles*, No. 3:17-cv-01005, 2019 WL 11865092, at *21 (M.D. Tenn. Jan. 9, 2019) ("Every defendant would like to know what went on before the grand jury which indicted him; however, disclosure of those proceedings is not proper merely for discovery purposes." (quotation marks omitted)). In view of the "strong policy of maintaining secrecy of grand jury proceedings," a criminal defendant must demonstrate a "particularized need" for the pretrial disclosure of grand jury testimony that outweighs "the interest in continued grand jury secrecy."[6] *United States v. Short*, 671 F.2d 178, 184–86 (6th Cir. 1982); *Jones v. Perry*, No. 3:16-cv-02631, 2020 WL 10486255, at *3 (M.D. Tenn. Dec. 21, 2020).

Ivory does not explain what "particularized need" Morris could have asserted to justify complete disclosure of Waggoner's grand-jury transcript. Nor could Morris have shown this need by simply asserting her desire to review the entirety of the transcript to better assess Waggoner's credibility. *See, e.g.*, *United States v. Maike*, No. 4:17CR-00012-JHM, 2020 WL 3066624, at *1 (W.D. Ky. June 9, 2020) defendant's argument that he needed to see grand-jury transcripts "to understand the specific evidence facing him and to properly impeach the Government's evidence" did not warrant their disclosure); *United States v. Ferguson*, 844 F. Supp. 2d 810, 829 (E.D. Mich. 2012) ("The defendants' general statements that they need the grand jury testimony to prepare for trial and for possible impeachment of the witnesses are insufficient to demonstrate a particularized need for disclosure of grand jury testimony."); *United States v. Smith*, No. 02-20380 BV, 2004 WL 784521, at *2 (W.D. Tenn. Jan. 26, 2004) ("A

---

[6] The Jencks Act, which "generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at a trial," does not apply to a defendant's request "for pretrial disclosure of a grand jury transcript." *Short*, 671 F.2d at 185–86.

'generalized desire' to inspect the grand jury transcripts in the hopes that evidence beneficial to the defendant will be discovered does not satisfy the particularized need requirement."). In the absence of any indication that the Court would have authorized Morris to see more of Waggoner's grand-jury transcript than what Koshy showed to her, her failure to review the entirety of the transcript cannot be said to be unreasonable. *See Byrge v. United States*, Nos. 3:20-CV-307-TAV-HBG, 3:18-CR-147-TAV-HBG-17, 2021 WL 5168255, at *6 (E.D. Tenn. Nov. 5, 2021) (counsel was not ineffective in failing to file motion that would have been denied); *cf. United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004) ("[C]ounsel cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues.").

In sum, because Ivory has not shown that any aspect of Morris's investigation or her advice to accept the Government's plea offer was objectively unreasonable, he has failed to satisfy the deficientperformance prong. This alone dooms his § 2255 claim. *See United States v. Garofolo*, 425 F. App'x 460, 462 (6th Cir. 2011) ("Because both prongs must be satisfied to establish ineffective assistance, if a petitioner cannot satisfy one prong, the other need not be considered.").

## II.  Prejudice

For the sake of completeness, we also consider whether Morris's performance prejudiced Ivory. Ivory contends that he was prejudiced by Morris's unreasonable advice to plead guilty because, absent this advice, he would have proceeded to trial. (*See* Ivory's Proposed Findings at 4–5.) When, as here, "a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee*, 582 U.S. at 364–65 (quoting *Hill v. Lockhart*, 474

U.S. 52, 59 (1985)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Gilbert*, 64 F.4th at 771 (quoting *Strickland*, 466 U.S. at 694).  A defendant must show prejudice through evidence, not speculation.  *See id.* at 772–73.

A criminal defendant alleging ineffective assistance based on his counsel's advice to plead guilty "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *Pilla v. United States*, 668 F.3d 368, 372–73 (6th Cir. 2012).  This is an objective test that a defendant cannot satisfy by merely saying that he would have gone to trial if he had received different advice.  *Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016); *Pilla*, 668 F.3d at 373.  To determine "whether a defendant has demonstrated that he would have" gone to trial "had he not received unreasonable advice," we consider (1) the defendant's likelihood of success at trial, (2) the potential consequences of going to trial, and (3) "any underlying evidence of the defendant's state of mind at the time he decided" to plead guilty.  *See Neill v. United States*, 937 F.3d 671, 677–78 (6th Cir. 2019) (citing *Lee*, 582 U.S. at 365–71).

For the first factor, we consider whether the defendant had any plausible chance of acquittal; if there was none, it is highly likely that the defendant would have accepted a plea offered by the Government instead of going to trial.  *See United States v. Ramirez-Figueredo*, 33 F.4th 312, 316 (6th Cir. 2022) (citing *Lee*, 582 U.S. at 367).  As already noted, we do not agree with Ivory that the Government's case was "weak."  The Government had three eyewitnesses, including Ivory's cousin, who would all potentially testify that Ivory committed the crimes at issue.  (*See* Oct. 12 Morris Decl. ¶ 9.)  We find it unlikely even without physical evidence that a jury would have acquitted Ivory in view of this testimony, and Ivory has not provided us with

18

any basis to conclude otherwise. Accordingly, we conclude that Ivory's likelihood of success at trial would have been minimal.

For the second factor, we consider "the comparative consequences of a guilty plea and conviction at trial" because "when these consequences are 'similarly dire, even the smallest chance of success at trial may look attractive.'" *Ramirez-Figueredo*, 33 F.4th at 316 (quoting *Lee*, 582 U.S. at 367). The consequences of following Morris's advice and pleading guilty was a sentence of 25 years. By contrast, Ivory would have faced more than 40 years in prison if he was convicted at trial. Faced these alternatives, no rational defendant in Ivory's position would have turned down the Government's offer and taken his chances at trial. *See Padilla*, 559 U.S. at 372; *Pilla*, 668 F.3d at 373.

For the third factor, we must consider "the defendant's state of mind at the time he decided" to plead guilty. *Neill*, 937 F.3d at 677. In doing so, we should not rely "solely on '*post hoc* assertions from a defendant' about what he would have done" but instead "'look to contemporaneous evidence to substantiate a defendant's expressed preferences[.]'" *Id.* at 679 (quoting *Lee*, 582 U.S. at 369). Ivory maintains that he would have gone to trial if he thought there was a good chance that Ms. Thomas would be the only witness at trial, that Mr. Waggoner and White Boy had contradicted themselves, or if there otherwise was strong impeachment evidence. (Ivory Decl. ¶ 6.) But these are merely "*post hoc* assertions" about what Ivory purportedly would have done. Ivory does not direct us to, and we are not aware of, any evidence from November 2016 (when Ivory pled guilty) that substantiates these assertions. We therefore do not credit them. *See id.* at 679 (finding unpersuasive defendant's testimony, given at an evidentiary hearing, that he would have pursued an appeal because it was not substantiated by

19

contemporaneous evidence); *Dentley v. United States*, No. 3:18-cv-00093, 2021 WL 4319734, at *3–4 (M.D. Tenn. Sept. 23, 2021) (same).

In sum, Ivory has failed to demonstrate that he was prejudiced by Morris's investigation and advice. This failure supplies a second and independent reason for denying Ivory's § 2255 motion.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, a § 2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quotation marks omitted). Where a district court has rejected a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. Because no reasonable jurist would find our rejection of Ivory's ineffective-assistance-of-counsel claim debatable, we decline to issue a certificate of appealability.

**CONCLUSION**

For the foregoing reasons, we deny Ivory's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. We also decline to issue a certificate of appealability. It is so ordered.

_____
Marvin E. Aspen
United States District Judge


Dated: January 10, 2024